UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRISHA ANNE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:17CV403-PPS-MGG |
| | ) |
| NANCY BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Trisha Anne Jackson seeks review of the Social Security Administration's decision denying her application for disability insurance benefits. Because the ALJ discounted the opinion of Jackson's treating doctor without good reason, the case will be remanded for further consideration.

**Background**

Jackson filed for benefits on August 9, 2011, alleging that she became disabled on August 20, 2010. Following a hearing, on April 5, 2013, an administrative law judge held that she was not disabled. Jackson appealed to this Court, and the case was remanded by agreement of the parties in April 2015. During the appeal, Jackson filed a second application and was found disabled as of April 6, 2013. So the remand in this case was limited to determining whether Jackson was disabled from August 20, 2010 to April 5, 2013. The ALJ found that she was not, and Jackson now appeals that determination.

1

The ALJ's decision contains a thorough review of the facts and medical evidence, and I will not repeat them here. It's enough to say here that the ALJ found that Jackson suffered from the following severe impairments: diabetes mellitus, asthma, dyslipidemia, hypertension, morbid obesity, degenerative disc disease of the lumbar spine, right ankle with degenerative changes, right knee with degenerative changes, history of hernias with repair, and major depressive and bipolar disorder. [A.R. at 734.] Because these severe impairments did not meet or equal the Listings, the ALJ evaluated Jackson's residual functional capacity ("RFC"), finding that Jackson could perform sedentary work with a multitude of additional limitations. [A.R. at 737.]

**Discussion**

On appeal, Jackson raises three arguments that she claims warrant remand. For starters, I must be cognizant of my role in this process. It is not to determine from scratch whether or not Jackson is disabled. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). If substantial evidence supports the Commissioner's factual findings, they are conclusive. 42 U.S.C. §405(g). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Substantial evidence" is more than a "scintilla" of evidence, but it's less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). So the review is a light one. But of course,

I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Jackson first argues that the ALJ erred in evaluating the opinion evidence and creating an evidentiary gap between the opinion evidence and the RFC. In particular, Jackson takes issue with the little weight afforded by the ALJ to the opinions of Jackson's treating physician and the consultative examiner. Because I find that the ALJ erred in assigning little weight to the treating physician's opinion, I will address only that argument.

Dr. Miller is a pain management specialist and was unquestionably Jackson's treating physician; he examined her on numerous occasions during the relevant period. [*See e.g.* A.R. 665-66, 687, 1053, 1081, 1105, 1127, 1148, 1166, 1185, 1197, 1201, 1210.] A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). This rule is sensible. It takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the bias that a treating physician may develop with the patient. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

If the ALJ determines that the opinion is unsupported or inconsistent with the record, the ALJ may reject the opinion, but he must give "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). When an ALJ does not give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the

3

length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Dr. Miller opined on December 26, 2016, that Jackson could not sit or stand for six to eight hours due to knee pain and that she had difficulty with ambulation and would have limited manipulative abilities. [A.R. at 1239.] He also opined that Jackson could not lift more than five pounds on a regular basis and that she would have difficulty bending, squatting, kneeling, and turning her body. [A.R. at 1239-40.]

The ALJ offered two reasons for affording little weight to Dr. Miller's opinion. First, according to the ALJ, "while the doctor reported that it relates back to 2010, the evidence of record does not support it." [A.R. at 742.] Second, the ALJ pointed to two physical examinations which the ALJ suggested were inconsistent with Dr. Miller's opinions.

The first examination was a consultative evaluation on November 1, 2011, in which the consultative examiner, Dr. Ralph Inhabit, found that Jackson had full range of motion of the knees, normal strength in the lower extremities and walked with a normal gait. In addition, her range of motion, strength, and grip strength in the upper extremities was noted as normal. [*Id.*]

In choosing to discount the treating physician's opinion, the ALJ relied in part on this examination, which the ALJ viewed as inconsistent with the treating physician's conclusions. But the CE's conclusion, even based on the normal findings described

4

above, was very similar to Dr. Miller's. The CE found that Jackson could not sit for longer than 15-20 minutes, could walk only short distances for up to one to two blocks, and could lift only 10 pounds due to her muscle spasms and pain. [A.R. at 411.]. In other words, oddly, the very evidence that the ALJ pointed to undermine the opinion of Dr. Miller was actually quite consistent with the doctor's opinion.

The second piece of evidence viewed as inconsistent with the treating physician's opinion was a physical examination conducted by Dr. John Adlard, an endocrinologist, in December 2012, which revealed that Jackson's gait, strength, tone, and coordination were normal. [A.R. at 677.] But this evaluation clearly took place in the context of Jackson's complaints about her diabetes. [A.R. at 675.] Indeed, the record expressly notes that the chief complaint is that Jackson is "here for medically necessary evaluation of her Type 2 DM." [*Id.*] Moreover, the ALJ's reference to the examiner's findings that her gait, strength, tone, and coordination is hardly compelling. The notes contain a long laundry list of the various systems evaluated – although, there is no information in the notes about how these systems were evaluated – and all the record says with respect to Jackson's musculoskeletal system (including gait and station, digits and nails, and muscle strength/tone) is "normal." [A.R. at 677.]

I'm not convinced that either of these evaluations were good reasons to discount the opinion of Jackson's treating physician, given that one was not even inconsistent and the other was not well supported. It also doesn't make sense to me that the ALJ used the CE examination to discount the treating physician's opinion because they were inconsistent with each other, but then subsequently discredited the CE's report because

5

it was internally inconsistent. In other words, the ALJ used what he viewed as an internally inconsistent and not credible examination to discount the credibility of another opinion. That just doesn't follow.

There's more. In discounting Dr. Miller's opinion, the ALJ failed to engage in the required analysis mandated by the regulations. This is yet another error that compels a remand. As explained above, when an ALJ decides not to give controlling weight to a treating physician's opinion, he must give "good reasons" for doing so. *Scott*, 647 F.3d at 740. Failure to do so is cause for remand. Because the ALJ did not give controlling weight to the treating physician's opinion, the regulations required the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Moss*, 555 F.3d at 561; *see also* 20 C.F.R. § 404.1527(c). The ALJ considered none of these factors.

Instead of undermining Dr. Miller's opinion, consideration of all of the required regulatory factors makes that opinion stronger. First, Dr. Miller had treated Jackson on numerous occasions during the relevant period. Second, Dr. Miller is a pain management specialist, specializing in treating Jackson's chronic pain conditions. He also performed exams that confirmed her limping gait, reduced flexion or extension, and fibromyalgia. [A.R. at 661-62.] And he was familiar with her treatment history, including a failure of conservative treatments and had reviewed an MRI showing a large herniated disc and extruded disc. [A.R. 1169.] These facts may well lead to a

different conclusion than the one reached by the ALJ to afford Dr. Miller's opinion little weight.

In sum, I find that the ALJ failed to give "good reasons" for not giving controlling weight to the treating physician's opinion. The ALJ's failure to do so is cause for remand. Because this issue calls for remand, I will not address Jacksons' other arguments in support of reversal. However, the ALJ should consider her arguments as appropriate.

For all of the reasons stated above, the ALJ's decision denying benefits is REVERSED and this cause is REMANDED for further proceedings consistent with this Opinion and Order.

SO ORDERED.

ENTERED: September 5, 2018

/s/ Philip P. Simon
Philip P. Simon, Judge
United States District Court